INTERNATIONAL UNION OF OPER-
ATING ENGINEERS, LOCAL NO.
714, Plaintiff-Appellant,

v.

SULLIVAN TRANSFER, INC., et al.,
Defendants-Appellees.

No. 80–1740.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 13, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 22, 1981.

Marvin Menaker, Dallas, Tex., for plaintiff-appellant.

Clark, West, Keller & Butler, David M. Ellis, Dallas, Tex., for Sullivan Transfer.

Mullinax, Wells, Baab, Cloutman & Chapman, L. N. D. Wells, Jr., G. William Baab, Dallas, Tex., for International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

James L. Hicks, Jr., Dallas, Tex., for Teamsters Local 745.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

The International Union of Operating Engineers, Local 714, appeals from the district court order dismissing its suit against Sullivan Transfer, Inc., the International Brotherhood of Teamsters and a Teamsters local union. In a five-count complaint, the Operating Engineers alleged that Sullivan had assigned certain forklift work to Teamsters members which should have been assigned to members of the Operating Engineers. The Operating Engineers sought damages and injunctive relief against both the employer and the competing union.

The district court dismissed the suit, holding that a determination of the jurisdictional dispute by the National Labor Relations Board under section 10(k) of the labor act, 29 U.S.C. § 160(k), was "entitled to deference and recognition as *res judicata.* . . ." We hold that section 10(k) determinations are not entitled to either res judicata or collateral estoppel effect, and therefore reverse.

## I. Facts and Procedural History

Sullivan Transfer is engaged in transporting, setting up and dismantling heavy equipment and machinery at new construction sites and at the sites of the rehabilitation or refurbishment of existing facilities. The work at existing facilities, referred to as "old construction," encompasses 80 to 90 per cent of Sullivan's work. Sullivan entered into collective bargaining agreements with both the Operating Engineers and the Teamsters from 1967 to the time of this suit. Apparently the agreements with each union designate forklift work as within the jurisdiction of that union.[1] The Employer assigned all of the forklift work on new construction to the Operating Engineers,[2] but assigned most of the work on old construction to the Teamsters.[3]

This arrangement was not satisfactory to the Operating Engineers. In April 1977,

---

1. Only the collective bargaining agreement with the Operating Engineers is in the record. Articles IV and V of that agreement deal with jurisdiction, and grant to the Operating Engineers all work involving "forklifts or any kind of machinery that develops power and is used in erection or dismantling of construction work . . . ." Construction work is defined "to include all building structures, including modifications thereof or additions thereto . . . ."

The N.L.R.B. stated in its section 10(k) determination that "[i]t appears that the Employer's current agreements with both the Teamsters and the Operating Engineers cover forklift work."

2. The assignment of the work on new construction to the Operating Engineers apparently occurred after the Teamsters expressed no interest in performing that small amount of work. See the N.L.R.B. section 10(k) determination, 247 N.L.R.B. No. 116 at 3.

3. The briefs of Sullivan and the Teamsters Union and the N.L.R.B. section 10(k) determination state that forklift work on old construction work had been assigned to "composite crews" consisting of members of both unions. This may be misleading. In a related unfair labor practice proceeding, the Administrative Law Judge noted that "Respondent's longstanding practice has been to disregard craft lines, assigning one crew to do all of the functions necessary for any one job assignment. Generally, a crew would be composed of either all Teamster employees or all Operating Engineer employees." Thus, it seems that work at any particular old construction site would be done either by the Operating Engineers or the Teamsters, but not by both working together. Only two of the forklift operators are members of the Operating Engineers, while 25 to 28 Teamsters do that work. After January 19, 1979, Sullivan refused to assign any of the work to the Operating Engineers. This refusal resulted in an unfair labor practice finding against Sullivan.

Sullivan filed an unfair labor practice charge against the Operating Engineers, contending that the union "has threatened, coerced or restrained [Sullivan] with an object of forcing or requiring [Sullivan] to assign forklift work to employees in Operating Engineers Local 714 rather than to employees in Teamsters Local 745...."[4] When an employer files an unfair labor practice charge alleging a jurisdictional dispute between two unions, the Board conducts a special proceeding authorized by section 10(k) of the act, 29 U.S.C. § 160(k).[5] The first step in a section 10(k) proceeding involves a determination of whether the parties have either settled the dispute or agreed upon a method to resolve the dispute. On the day scheduled for the section 10(k) hearing arising out of Sullivan's charges against the Operating Engineers, the parties executed what has become known as the tripartite agreement in which they agreed to refer the dispute over work in existing buildings to a jurisdictional committee of the International Teamsters and Operating Engineers unions and to be bound by the decision of the committee.[6] The Board, through its Regional Director, deferred the section 10(k) proceeding pending the decision of the unions' jurisdictional committee and, on October 12, 1978, dismissed the charges against the Operating Engineers since "[t]he Internationals awarded the disputed work to the charged party [the Operating Engineers]."[7]

Sullivan and the Teamsters disagreed with the Regional Director's ruling, however. After the parties signed the tripartite agreement, the jurisdictional committee met in August 1977, and "unanimously agreed ... that [the parties] are obligated to abide by the 1969 Jurisdictional agreement between the [Operating Engineers] and the [Teamsters] on all new construction work." The 1969 agreement had given forklift work at construction sites to the Operating Engineers. The reference to "new construction work" led Sullivan and

4. Section 8(b)(4) of the labor act, 29 U.S.C. § 158(b)(4), makes it an unfair labor practice for a union

> to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
> ....
> (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.

5. 29 U.S.C. § 160(k) provides as follows:

> (k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

6. The tripartite agreement executed by attorneys for both locals and for Sullivan, provides as follows:

> It is agreed among the undersigned parties that the International Unions will meet, decide and agree upon whether the following described work will be assigned to Sullivan Transfer Co., Inc., employees who are represented by the International Union of Operating Engineers, Local 714, or Teamsters Local 745:
>> All fork-lift or fork truck work performed by employees of Sullivan Transfer, Inc., which involves the relocation, installation or removal of machinery or equipment in existing buildings which is presently being performed by employees who are members of Teamsters Local 745 and presently being claimed by employees who are members of International Union of Operating Engineers, Local 714.
>
> The Parties named above agrees [sic] that they will be bound by the decision of the Internationals as to this work assignment and that neither local union will engage in a work stoppage prior to or subsequent to the decision, based upon the above described assignment of fork lift work.

7. Sullivan appealed the dismissal of the charges against the Operating Engineers; the Board dismissed that appeal in November 1978.

the Teamsters local to contend that the committee had not resolved the dispute over work in existing buildings.[8] In response to this contention, the Operating Engineers presented a letter agreement, which has come to be known as the Owens agreement, in which representatives of both Internationals agreed "that Sullivan Transfer Company is obligated to assign all fork lift driver work concerning the renovation or remodeling of existing construction to [the Operating Engineers]."[9] Sullivan and the Teamsters local refused to recognize or abide by the Owens agreement, however.

The jurisdictional dispute thus continued. On September 5, 1978, the Operating Engineers filed this suit in district court against Sullivan seeking damages and injunctive relief.[10] On April 20, 1979, Sullivan filed another unfair labor practice charge, this time naming the Teamsters local as respondent and alleging that the Teamsters had violated section 8(b)(4)(D). A section 10(k) hear-

ing was held before a hearing officer on May 23 and June 4, 1979. After the section 10(k) hearing was held, but six months before the N.L.R.B. made its decision, the Operating Engineers amended its complaint to add the Teamsters local and International as respondents. On February 4, 1980, the Board issued a section 10(k) decision which, rather than awarding the work to one union or the other, determined that the work should be assigned to both unions in accordance with the employer's past practice. The district court then dismissed the suit against Sullivan and the Teamsters on June 16, 1980, holding that the Board's section 10(k) determination was "entitled to deference and recognition as *res judicata....*" This appeal ensued.

## II. The Preclusive Effect of Section 10(k) Determinations

■ Prior to 1966 most courts held that the principles of res judicata did not ordi-

---

**8.** At oral argument, counsel for the Teamsters local stated that the jurisdictional committee "misperceived the dispute," and thus failed to resolve the conflict over existing work. There was certainly never any dispute over new construction; that small amount of work had always been assigned to the Operating Engineers and the Teamsters expressed no interest in that work. No unfair labor practice charges were ever filed in regard to new work. The tripartite agreement clearly applied to work in existing buildings. Thus the jurisdictional committee's assignment of work to the Operating Engineers must have been either an assignment of the work on existing buildings or a misperception of the dispute. The N.L.R.B. Regional Director, in his letter dismissing the charges against the Operating Engineers, found that the jurisdictional committee had "awarded the disputed work to the [Operating Engineers]." Rec. at 24. The N.L.R.B. General Counsel, in denying Sullivan's appeal, agreed that the work had been awarded to the Operating Engineers. Rec. at 34.

**9.** The Owens agreement provides as follows:

The parties signatory to this letter reaffirm that they are mutually bound by the 1969 Jurisdictional Agreement between IUOE and the IBET on all new construction work. The parties mutually agree that in the application of that Jurisdictional Agreement and the contracts the parties have with Sullivan Transfer Company, the proper interpretation of that language would mean that Sullivan Transfer Company is obligated to assign all fork lift

driver work concerning the renovation or remodeling of existing construction to IUOE. Included in the fork lift driver work would be the handling of any machinery to be removed or installed in existing buildings.

Representatives of IUOE and IBET hereby acknowledge this agreement by their signatures hereinafter subscribed.

**10.** It is interesting to note that at the time the Operating Engineers filed this suit it had no other effective legal recourse. The unfair labor practice charge against it, necessary to initiate a section 10(k) proceeding, had been dismissed. The N.L.R.B., through its Regional Director and General Counsel, had ruled that the work had been awarded to the Operating Engineers, but the employer refused to go along with that ruling. The Operating Engineers could have struck Sullivan, but with only two member employees it is quite doubtful that such a strike would have been effective. In cases such as this one, where an employer refuses to abide by the resolution of a jurisdictional dispute, the section 8(b)(4)(D) charge nevertheless dies even if the employer's actions are contrary to a section 10(k) determination. The employer does not commit an unfair labor practice by disregarding the Board, so no charges can be brought against it. *See N. L. R. B. v. Plasterers' Local Union No. 79,* 404 U.S. 116, 126–27 & n. 19, 92 S.Ct. 360, 376 & n. 19, 30 L.Ed.2d 312 (1971); *Brady-Hamilton Stevedore Co.,* 198 N.L.R.B. 147, 148–49 (1972), *aff'd* 504 F.2d 1222 (9th Cir. 1974); 29 C.F.R. § 102.91 (1980).

narily apply to determinations of an administrative agency even if that agency acted in a judicial capacity. *See, e. g., Bridges v. United States*, 346 U.S. 209, 234, 73 S.Ct. 1055, 1068, 97 L.Ed. 1557 (1953) (Reed, J., dissenting); *Pearson v. Williams*, 202 U.S. 281, 284–85, 26 S.Ct. 608, 610, 50 L.Ed. 281 (1906); *Churchill Tabernacle v. F. C. C.*, 160 F.2d 244, 246 (D.C.Cir.1947). Although there was considerable erosion in the rule denying res judicata effect to administrative decisions,[11] the rule was not finally settled until the Supreme Court decided *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). In that case, the Court stated that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," res judicata should apply. 384 U.S. at 422, 86 S.Ct. at 1560. *Utah Construction* established a two-part test to determine whether res judicata effect should be given to an administrative determination. First, the agency proceeding must be examined to determine whether the agency was "acting in a judicial capacity" and whether the parties had "an adequate opportunity to litigate" the issues before the agency. Second, the general rules of res judicata must be applied to the case. Not all administrative adjudications, and not all judicial determinations, are entitled to res judicata effect. For the principles of res judicata to apply, administrative determinations, like court judgments, must be valid, final and on the merits.[12]

To determine whether a section 10(k) proceeding meets the criteria for res judicata, it is necessary to examine the nature of the proceeding. The purpose of section 10(k) is to attempt to achieve a peaceful expedited settlement of a jurisdictional dispute without going through the entire unfair labor practice procedure and without subjecting the employer to the cross fire of economic warfare between competing unions.[13] When the Board receives a section 8(b)(4)(D) unfair labor practice charge, and the Regional Director determines that the charge might have merit and that the parties have neither settled nor agreed to a method of settling the dispute, the Regional Director notifies the parties to the dispute that a hearing will be held before a hearing officer.[14] The hearing procedure is set out in section 101.34 of the N.L.R.B. Rules and Regulations, 29 C.F.R. § 101.34 (1980):

> If the parties have to adjusted the dispute or agreed upon methods of voluntary adjustment, a hearing, usually open to the public, is held before a hearing officer. The hearing is nonadversary in character, and the primary interest of the hearing officer is to insure that the record contains as full a statement of the pertinent facts as may be necessary for a determination of the issues by the Board. All parties are afforded full opportunity to present their respective positions and to produce evidence in support of their contentions. The parties are permitted to argue orally on the record before the hearing officer. At the close of the hearing, the case is transmitted to the Board

---

**11.** *See* 2 K. Davis, Administrative Law Treatise § 18.02 (1958), and cases cited therein. Professor Davis was an outspoken opponent of the rule denying *res judicata* application.

**12.** *See, e. g., Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (prior judgment must be valid); *G. & C. Merriam Co. v. Saalfield*, 241 U.S. 22, 36 S.Ct. 477, 60 L.Ed. 868 (1961) (must be final); *Hughes v. United States*, 71 U.S. (4 Wall.) 232, 18 L.Ed. 303 (1866). *See also* Restatement (Second) of Judgments § 131 (Tent. Draft No. 7, 1980) (finality required for res judicata to apply to administrative adjudication).

**13.** *See International Telephone and Telegraph Corp. v. Local 134, International Brotherhood of Electrical Workers*, 419 U.S. 428, 430–31, 439–40, 95 S.Ct. 600, 603–04, 607–08, 42 L.Ed.2d 558 (1975).

**14.** Technically there are only two parties to most disputes—the employer and the union against which the unfair labor practice is charged. Typically that would be the union which does not have the work at issue and is trying to get it. If there is a competing union, as there is in the present case, that union will also be served notice of the hearing and will fully participate in the hearing.

for decision. The hearing officer prepares an analysis of the issues and the evidence, but makes no recommendations in regard to resolution of the dispute.

The parties are given seven days after the close of the hearing to file briefs with the Board. The Board then reviews the evidence presented at the hearing, the hearing officer's analysis and the briefs and issues its determinations.

Under sections 10(e) and 10(f) of the labor act, 29 U.S.C. §§ 160(e) and 160(f), Board orders in unfair labor practice cases are subject to review by the United States Court of Appeals.[15] Board determinations under section 10(k) are not subject to court review, however.[16] If, after the Board issues its section 10(k) determination, the charged party (i. e., the union seeking the work) refuses to comply, the Regional Director then proceeds with the section 8(b)(4)(D) unfair labor practice charge.[17] The Board decision in the section 10(k) proceeding carries great weight in the unfair labor practice adjudication but is not determinative.[18] Only if the Board finds that

15. Section 10(e) permits the Board to petition the Court of Appeals for enforcement of an unfair labor practice order. Section 10(f) permits "[a]ny person aggrieved by a final order of the Board" to seek review of that order in the Court of Appeals.

16. *Shell Chemical Co. v. N. L. R. B.*, 495 F.2d 1116, 1119–23 (5th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 449 (1975).

17. Counsel for appellees Sullivan and the Teamsters Union implied at oral argument that if any of the parties involved in the jurisdictional dispute disagreed with the section 10(k) determination that party could compel the Regional Director to proceed with the unfair labor practice charge under section 8(b)(4)(D). It is not clear that this is so, however. It is clear that if the employer refuses to abide by the section 10(k) determination the prevailing union cannot seek an unfair labor practice ruling and must instead rely on its economic weapons (e. g., strikes or boycott) to compel compliance. *See N. L. R. B. v. Plasterers' Local Union No. 79, supra*, 404 U.S. at 126–27 & n. 19, 92 S.Ct. at 367 & n. 19; 29 C.F.R. § 102.91 (1980) (unfair labor practice charge dismissed "irrespective of whether the employer has complied with that determination"). Thus the section 10(k) determination is of no binding effect or preclusive value when the employer decides not to comply. The failure of the section 10(k) determination to bind the employer is another reason why it cannot have preclusive effect on the union. *See* 1B J. Moore & T. Currier, Moore's Federal Practice 3777 (1980) ("both parties to the subsequent litigation must be bound by the prior judgment").

Moreover, it may not be possible for the non-prevailing union to compel an unfair labor practice proceeding if that union is not the party charged in the original section 8(b)(4)(D) complaint. The Board's regulations provide that if the charged union prevails, the charge must be dismissed as to that union. Since that is the only charge in existence, the whole proceeding comes to an end. In the present case, Sullivan made its unfair labor practice charge against the Teamsters, and they prevailed so the charge had to be dismissed. The section 10(k) determination gave the Teamsters, and *not* the Operating Engineers, ten days to notify the Regional Director whether it would comply with the determination or force a section 8(b)(4)(D) proceeding. *See* the Board's Decision and Determination of Dispute [the section 10(k) determination], 247 N.L.R.B. No. 116 at 12–13. *See also* President Truman's message vetoing the Taft-Hartley bill in which he listed as one of the flaws of the act that should the charged party in a section 10(k) case prevail, "the Board would be without power over other parties to the dispute to whom the award might be unacceptable." 93 Cong.Rec. 7502 (1947), *reprinted in* 1 Legislative History of the Labor Management Relations Act of 1947, at 918–19 (1948).

After the first section 10(k) proceeding in this case was dismissed on the grounds that the parties had settled the dispute in favor of the charged party, the Operating Engineers, the employer appealed the dismissal in part because the Teamsters had indicated that they would not comply. In dismissing the appeal, the General Counsel noted that there was no unfair labor practice charge pending against the Teamsters, who were not charged in the section 8(d)(4)(D) complaint. The implication is that only if the charged party fails to comply with the section 10(k) determination can the section 8(b)(4)(D) proceeding, held in abeyance during the section 10(k) proceeding, be pursued. Thus in the present case the only way the Operating Engineers could test the section 10(k) determination in an unfair labor practice proceeding, and ultimately in an appellate court, is for Sullivan to file a new section 8(b)(4)(D) charge against the Operating Engineers. It is meaningless to say that the Operating Engineers Union has an avenue of appeal if that avenue requires prior action on the part of Sullivan.

18. *N. L. R. B. v. Plasterers' Local Union No. 79, supra*, 404 U.S. 122 n. 10, 92 S.Ct. 365, n. 10; *Shell Chemical Co. v. N. L. R. B., supra*, 495 F.2d at 1121–23.

section 8(b)(4)(D) has been violated by the respondent union and issues a final unfair labor practice order will aggrieved parties or the Board be able to seek judicial review or enforcement.

A section 10(k) determination thus lacks several indicia of finality required for an administrative decision to have res judicata effect: the section 10(k) determination is not directly appealable, the issuance of the section 10(k) determination does not mark the end of the process within the administrative agency, and "the § 10(k) decision standing alone, binds no one." *N. L. R. B. v. Plasterers Local Union No. 79*, 404 U.S. 116, 126, 92 S.Ct. 360, 376, 30 L.Ed.2d 312 (1971). In *International Telephone and Telegraph Corp. v. Local 134, International Brotherhood of Electrical Workers*, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975), the Supreme Court unanimously held that a section 10(k) proceeding was not an adjudication and thus need not conform to section 554 of the Administrative Procedure Act, 5 U.S.C. § 554, noting that a section 10(k) determination is not a "final disposition." [19] The Court quoted at length from its unanimous opinion in *N. L. R. B. v. Plasterers Local Union No. 79, supra*, where it stated:

The § 10(k) determination is not binding as such even on the striking union. If that union continues to picket despite an adverse § 10(k) decision, the Board must prove the union guilty of a

§ 8(b)(4)(D) violation before a cease-and-desist order can issue. The findings and conclusions in a § 10(k) proceeding are not *res judicata* on the unfair labor practice issue in the later § 8(b)(4)(D) determination. *International Typographical Union*, 125 N.L.R.B. 759, 761 (1959). Both parties may put in new evidence at the § 8(b)(4)(D) stage, although often, as in the present cases, the parties agree to stipulate the record of the § 10(k) hearing as a basis for the Board's determination of the unfair labor practice. Finally, to exercise its powers under § 10(k), the Board need only find that there is reasonable cause to believe that a § 8(b)(4)(D) violation has occurred, while in the § 8(b)(4)(D) proceeding itself the Board must find by a preponderance of the evidence that the picketing union has violated § 8(b)(4)(D). *International Typographical Union, supra*, at 761 n. 5 (1959).

404 U.S. at 122 n.10, 92 S.Ct. at 365 n.10. This court examined the finality of a section 10(k) determination in *Shell Chemical Co. v. N. L. R. B.*, 495 F.2d 1116 (5th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 449 (1975), and held that a section 10(k) determination was not appealable under section 10(e) or section 10(f) since it was not a final order. [20] Lacking in finality, a section 10(k) determination cannot receive res judicata effect. [21]

19. *Accord, Bricklayers, Masons and Plasterers International Union v. N. L. R. B.*, 475 F.2d 1316 (D.C.Cir.1973). The Senate version of the bill, which included a provision permitting the Board to appoint an arbitrator to determine a jurisdictional dispute, specifically stated that such an award would "be deemed a final order of the Board." S.1126, 80th Cong., 1st Sess. § 10(k) (1947). That provision was designed to "permit the Board to seek enforcement of the award without further proceedings." S.Rep. No.105, 80th Cong., 1st Sess. 27 (1947). The provision was not included in the House version, and was deleted by the Conference, however. H.R.Conf.Rep.No.510, 80th Cong., 1st Sess. 57 (1947), U.S.Code Cong.Serv.1947, p. 1135. It is now well settled that a section 10(k) determination is not a final order of the Board and cannot be directly enforced in the courts without further administrative proceedings.

20. The Supreme Court's *International Telephone and Telegraph* case, and this court's *Shell Chemical Co.* decision, also indicate that section 10(k) determinations are not "adjudications." Since *Utah Construction* held that the decisions of administrative agencies can be given res judicata effect only when those agencies act "in a judicial capacity," the failure of section 10(k) determinations to qualify as "adjudications" may present a formidable obstacle to the application of res judicata. In many ways the Board's actions in making a section 10(k) determination more closely resemble those of mediators than those of judges. But we need not now decide whether the Board is acting in a judicial capacity when it makes a section 10(k) determination since we find that such determinations are not final orders and thus are not entitled to res judicata effect.

21. Professor Kenneth C. Davis, a strong proponent of giving res judicata effect to most ad-

Counsel for appellees, Sullivan and the Teamsters Union, argue that even if res judicata is not appropriate in this case, collateral estoppel bars the Operating Engineers' claims and that in using the term res judicata, the trial court was referring to collateral estoppel. It is certainly true that the distinction between res judicata (or claim preclusion) and collateral estoppel (or issue preclusion) has become blurred. Some commentators treat collateral estoppel as a subcategory of res judicata. *See, e. g.*, 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4402 (1981) ("it is better to use res judicata in its broader sense to encompass both [traditional res judicata and collateral estoppel]").[22] This court has acknowledged that the term res judicata is now "sweepingly used" to incorporate both "true" res judicata and collateral estoppel. *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978). It is thus possible that the district court, in deciding that the Operating Engineers' claims were barred by res judicata, was applying the doctrine of collateral estoppel rather than traditional res judicata. But even if we assume that the district court was applying collateral estoppel, that application was also improper. Section 10(k) determinations are not entitled to res judicata effect because they are not final adjudications. The requirement of finality applies just as strongly to collateral estoppel as it does to res judicata. *Kaspar Wire Works, Inc. v Leco Engineering & Machine, Inc., supra*, 575

F.2d at 537–38; J. Moore & T. Currier, 1B Moore's Federal Practice 3777 (1980) ("The essence of collateral estoppel by judgment is that some question or fact in dispute has been judicially and *finally* determined . . . .") (emphasis added); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4432 (1981).[23] Thus, if a section 10(k) determination is not entitled to res judicata effect because it lacks finality, it is not entitled to collateral estoppel effect for the same reason.

### III. The Effect of a Section 10(k) Determination in a Section 301 or Section 303 Suit

■ By holding that the section 10(k) determination in this case is not entitled to res judicata or collateral estoppel effect, we are by no means holding that the Board's decision is without effect in the present suit. Congress enacted section 10(k) to provide the means by which an employer could protect itself from being caught in the middle of a dispute between unions. *See* H.Rep.No.245, 80th Cong., 1st Sess. 23–24 (1947), *reprinted in* 1 Legislative History of the Labor Management Relations Act of 1947 at 314–15 (1948). The section as originally drafted in the Senate provided for arbitration of jurisdictional disputes, but as finally enacted it only established an expedited Board procedure.[24] The intent of Congress was to introduce a neutral party to attempt to settle the dispute thus providing a peaceful alternative to the newly–illegal jurisdictional strikes.

ministrative decisions, cites the section 10(k) determination as "[a]n outstanding example of a decision that has no res judicata effect because it is not final. . . ." K. Davis, Administrative Law of the Seventies § 18.06 (1976). The only reported decision we have found directly deciding this issue agreed that a section 10(k) suit is not res judicata in a subsequent suit for damages under section 301. *Shell Chemical Co. v. Teamsters Local Union No. 676*, 353 F.Supp. 480 (D.N.J.1973). *See also* Note, Labor Law-Res Judicata, 67 Mich.L.Rev. 824, 828 n.27, 832 n.43 (1969).

**22.** *But see* 1B J. Moore & T. Currier, Moore's Federal Practice 621–22, 631–34 (1980).

**23.** The recently approved Restatement (Second) of Judgments also clearly indicates

that finality is required for collateral estoppel as well as res judicata. *See* Restatement (Second) of Judgments § 131(2)(d) (requiring finality) & Comment a (indicating that section 131 applies when an administrative decision is "invoked as the basis of claim or issue preclusion. . . .") (Tent. Draft No. 7, 1980). Although the American Law Institute has yet to publish the new Restatement, it was finally approved by the Institute in May 1980; section 131 of Tentative Draft No. 7 is included in the final Restatement as section 83.

**24.** *See* S.1126, 80th Cong., 1st Sess. § 10(k) (1947); H.R.Conf.Rep.No.510, 80th Cong., 1st Sess. 57 (1947).

The Supreme Court has noted, in dicta, that the congressional policy in favor of expeditious settlement of jurisdictional disputes would be ill-served if employers were exposed to liability when they invoke the procedure provided by section 10(k) and abide by the determination reached through that procedure. In *Carey v. Westinghouse*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the Court held that the statutory scheme for resolving jurisdictional disputes did not bar arbitration of such a dispute which had not resulted in a strike or a threat of strike. The Court noted that the availability of a Board remedy would not bar a suit for damages, but that if the employer invoked the Board remedy it would be protected from liability. 375 U.S. at 268, 84 S.Ct. at 407.[25] The Court also stated that if the Board makes a determination in a jurisdictional dispute which disagrees with a prior arbitration award, the Board's determination would take precedence and the employer would not be liable for damages under section 301 if its actions conformed to the Board determination. 375 U.S. at 272, 84 S.Ct. at 409.[26] This court came to a similar conclusion in *New Orleans Typographical Union No. 17 v. N. L. R. B.*, 368 F.2d 755, 767 (5th Cir. 1966), holding that a Board determination under section 10(k) took precedence over an arbitration award and therefore precluded court enforcement of the arbitration award.

Neither *Carey* nor *New Orleans Typographical* is directly analogous to the present case. Here, there is no conflict between a Board determination and an arbitration award. Instead, there is a potential conflict between a Board determination and a court judgment in a suit for damages and injunctive relief. Nevertheless, we find that Congress intended to afford employers protection when their actions conform to a Board determination under section 10(k). Sections 10(k) and 8(b)(4)(D) are products of a congressional policy in favor of prompt and lasting settlement of jurisdictional disputes. To allow a nonprevailing union to sue an employer for damages when that employer acts in conformity with a section 10(k) determination would run counter to that clearly-expressed congressional policy. *Accord, UAW Local 1519 v. Rockwell International Corp.*, 619 F.2d 580 (6th Cir. 1980); *Dock Loaders and Unloaders, ILA Local 854 v. W. L. Richeson & Sons, Inc.*, 280 F.Supp. 402 (E.D.La.1968). The national policy evidenced by section 10(k) and section 8(b)(4)(D) applies to unions as well as to employers. These sections were designed to channel jurisdictional disputes into less disruptive means of resolution than jurisdictional strikes. It would be just as inimical to that policy to permit damage suits against unions which participate in the section 10(k) process and agree to abide by the section 10(k) determination as it would be to allow suits against complying employers. We therefore hold that a nonprevailing union cannot recover damages from an employer or another union to the extent that such a recovery would be repugnant to an N.L.R.B. section 10(k) determination. On remand, the district court should examine the Operating Engineers' complaint, the section 10(k) determination and any other proffered evidence it deems appropriate and determine whether recovery under any of the counts of the complaint would be repugnant to the section

---

**25.** The "alternative remedy before the Board" discussed by the Court was not section 10(k) but was instead section 9(c)(1), 29 U.S.C. § 159(c)(1). Under that section, an employer or a union can petition the Board for clarification of a Board-certified bargaining unit. The parties in the present case could not have used that procedure since no Board-certified unit existed. Although section 10(k) and section 9(c)(1) are in many ways quite different, the policy considerations are similar: by permitting parties to petition for clarification of a certified unit, Congress provided a peaceful mechanism for resolving a particular kind of jurisdictional dispute. The notion that once an employer invokes such a mechanism it should be protected from liability applies equally to section 10(k) as it does to section 9(c)(1).

**26.** The Court also noted that the Board should show "deference to the [prior] arbitral award, provided the procedure was a fair one and the results were not repugnant to the Act." 375 U.S. at 270, 84 S.Ct. at 408 (footnotes omitted).

10(k) determination.[27] Any counts found repugnant must be dismissed.

## IV. Collateral Attack of the Section 10(k) Determination

In addition to a suit for damages, the Operating Engineers' complaint represents, in effect, an attempt to collaterally attack the section 10(k) determination. The union seeks injunctive relief to compel Sullivan to arbitrate the work assignment dispute, to compel the other parties to abide by the Owens agreement, and to prevent the Teamsters from making any further efforts to obtain the disputed forklift work. For the district court to grant such relief would clearly be repugnant to the section 10(k) determination. The union is actually requesting the court to declare the section 10(k) determination invalid.

N.L.R.B. determinations under section 10(k) are not directly reviewable in this or any other court. *Shell Chemical Corp. v. N.L.R.B., supra*, 495 F.2d at 1119–23. A section 10(k) determination can be judicially reviewed only if noncompliance with the determination has resulted in a section 8(b)(4)(D) unfair labor practice finding. At that point, a Court of Appeals may review the determination if the Board petitions for enforcement of its unfair labor practice order or if an aggrieved party petitions the court to set aside the order. 29 U.S.C. §§ 160(e) & 160(f) (sections 10(e) and 10(f) of the labor act).

In the present case no unfair labor practice proceeding has been held since the charged party in the section 8(b)(4)(D) complaint, the Teamsters, has agreed to abide by the section 10(k) determination. The proscribed method for the Operating Engineers to seek judicial consideration of the Board's handling of the jurisdictional dispute would thus be to commit or threaten to commit an unfair labor practice under section 8(b)(4)(D) and thus induce the employer to institute Board proceedings.[28]

There is a limited exception to the rule that precludes court review of Board orders unless provided for in section 10(e) or 10(f). In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court ruled that a district court had jurisdiction to entertain a suit alleging that the N.L.R.B. had improperly designated a bargaining unit including both professional and nonprofessional employees.[29] Much like section 10(k) determinations, bargaining unit determinations are generally not reviewable unless a party commits an unfair labor practice by refusing to comply with the order. *American Federation of Labor v. N.L.R.B.*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed.2d 347 (1940). In *Kyne*, the Court held that when the Board's actions contradicted the "clear and mandatory" provisions of a statute, review would be allowed.[30]

The Court discussed the *Kyne* exception to the usual rule of nonreviewability in

27. One of the determinations the district court will have to make in determining whether the Operating Engineers' allegations are repugnant to the section 10(k) determination is what legal effect, if any, the tripartite agreement and the Owens agreement have between the parties. If the court finds that those agreements bind any or all of the parties, an award of damages for breach of those agreements would not be repugnant to the section 10(k) determination.

28. Although this result may seem harsh, since the union is denied opportunity for review unless the employer takes the step of filing unfair labor practice charges, it is certainly less harsh than the result prior to the enactment of section 10(k). At that time, no N.L.R.B. mechanism existed for resolving jurisdictional disputes, and the only recourse for the union would be to strike. Such a strike would now be illegal, but it would induce the proceedings the union now seeks.

29. Section 9(b)(1) of the act provides "[t]hat the Board shall not (1) decide that any [bargaining] unit is appropriate ... if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1). In *Kyne*, the Board certified a unit including both professional and nonprofessional employees and denied the request of the professional employees' union to take a vote among the professionals.

30. The Court relied in part on the inability of the professional employees' union to obtain review of the order if jurisdiction were denied. There, like here, the union would have to commit an unfair labor practice (by either refusing to bargain with employer or by striking) and rely on the employer to file charges. The union would then claim as a defense to those charges

*Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). The Board had determined that Greyhound and another corporation, Floors, Inc., were joint employers of the porters, janitors and maids at four Greyhound bus terminals. It therefore certified a bargaining unit consisting of employees of both corporations. Greyhound sought direct review, contending that the Board's ruling contradicted the clear and mandatory language of section 2(3) of the act, which excludes independent contractors from the definition of employees. The Court denied direct review, holding that the case relied on a factual determination rather than the construction of the statute.

▆▆▆ From the pleadings in this case, there appear two ways in which the Board's section 10(k) determination is alleged to violate the labor act. The first is the Board's determination that the tripartite agreement was not an "agreed upon method for the voluntary adjustment of the dispute." The Board does not have jurisdiction to determine a jurisdictional dispute if it has before it "satisfactory evidence" that the parties have agreed upon a method to resolve the dispute. Although the tripartite agreement does appear on its face to be strong evidence that the parties had so agreed, the Board's determination that they had not was the kind of factual determination which the Supreme Court indicated would not warrant direct review. *Boire v. Greyhound Corp., supra.*

The Operating Engineers Union also alleges that the section 10(k) determination contradicted the labor act in that it failed to assign the disputed work to either union exclusively. Section 10(k) states that "the

Board is empowered and directed to hear and determine" jurisdictional disputes which have given rise to unfair labor practice charges. Prior to 1961, the Board interpreted this provision as requiring it to affirm the employer's assignment of the disputed work unless that assignment was contrary to a Board order or certification or a collective bargaining agreement. The Supreme Court held that interpretation invalid in *N.L.R.B. v. Radio & Television Broadcast Engineers Union, Local 1212 [CBS]*, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961). In that case, the Columbia Broadcasting System divided disputed lighting work between two unions. The Board affirmed the assignment finding that neither union had an exclusive right to work under a prior Board order or certification or a collective bargaining agreement. The Court held that the clear language of section 10(k) requires the Board to hear and decide the controversy and to award the disputed work to one union or the other.

This case is very much like *CBS*. Faced with two unions demanding the same work, Sullivan divided the work between them. Assignment of the work to either union was not required by a prior Board order or certification and the collective bargaining agreements did not clearly apportion the work between the unions. In affirming Sullivan's assignment of the work to both unions, the Board noted the possible conflict with *CBS*, but relied on language in that decision that section 10(k) "normally" requires assignment of work to one union or another as supportive of its position that under certain circumstances exclusive assignment is not required.[31] Examining the

the invalidity of the Board's order. If the Board reaffirmed its earlier order, as would be expected, and thus held that the union had committed an unfair labor practice, the union could petition a Court of Appeals to set aside the Board's finding under section 10(f), 29 U.S.C. § 160(f).

**31.** The Supreme Court stated:

We agree with the Second, Third and Seventh Circuits that § 10(k) requires the Board to decide jurisdictional disputes on their merits and conclude that in this case that requirement means that the Board should af-

firmatively have decided whether the technicians or the stage employees were entitled to the disputed work. The language of § 10(k), supplementing § 8(b)(4)(D) as it does, sets up a method adopted by Congress to try to get jurisdictional disputes settled. The words "hear and determine the dispute" convey not only the idea of hearing but also the idea of deciding a controversy. And the clause "the dispute out of which such unfair labor practice shall have arisen" can have no other meaning except a jurisdictional dispute under

**680**

Supreme Court's opinion as a whole, we are not convinced that the Board's reliance on the word "normally" is well placed. In its conclusion, the Court stated:

> We conclude therefore that the Board's interpretation of its duty under § 10(k) is wrong and that under that section it is the Board's responsibility and duty to decide which of two or more employee groups claiming the right to perform certain work tasks is right and then specifically to award such tasks in accordance with its decision.

344 U.S. at 586, 81 S.Ct. at 388. This seems to require an affirmative award of the work to one union or the other. The Board in the present case did not indicate why this case should be an exception to the rule requiring a definite assignment of the work. However, since the parties have not fully addressed this issue in their briefs, and since the district court did not reach the issue, we reserve judgment on whether the Board's determination was contrary to *CBS* and, if so, whether the determination is so contrary to the "clear and mandatory" language of section 10(k), as interpreted in *CBS*, as to warrant direct review under *Leedom v. Kyne, supra.* On remand, the district court should reach these issues.

### V. Conclusion

The decision of the district court granting the appellees' motions for summary judgment is reversed. We remand, with instructions to the district court to hear the merits of this case and to determine whether the Operating Engineers' complaint allegations are repugnant to the Board's section 10(k) determination and whether this case falls within the *Leedom v. Kyne* exception to the rule precluding direct review of nonfinal Board orders.

REVERSED AND REMANDED.

---

§ 8(b)(4)(D) which is a dispute between two or more groups of employees over which is entitled to do certain work for an employer. To determine or settle the dispute as between them would normally require a decision that one or the other is entitled to do the work in dispute. Any decision short of that would obviously not be conducive to quieting a quarrel between two groups which, here as in most instances, is of so little interest to the employer that he seems perfectly willing to assign work to either if the other will just let him alone. 334 U.S. at 597, 81 S.Ct. at 334.