ASSOCIATED GENERAL CONTRAC-
TORS OF MASSACHUSETTS,
INC., et al., Plaintiffs,

v.

BOSTON DISTRICT COUNCIL OF
CARPENTERS et al., Defendants.

Civ. A. No. 84–3603–G.

United States District Court,
D. Massachusetts.

Jan. 3, 1985.

John D. O'Reilly, III, Framingham,
Mass., for plaintiffs.

Michael A. Feinberg, Feinberg & Feld,
Richard W. Coleman, Boston, Mass., for
defendants.

### MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT[1]

GARRITY, District Judge.

■ This action is an attempt to enjoin the defendants Boston District Council of Carpenters and Local #33 of the United Brotherhood of Carpenters ("Carpenters") from taking their grievance against the Blount Brothers Corp. ("Blount") to arbitration. Underlying the grievance was a jurisdictional dispute between the Carpenters and the Massachusetts District Laborers Council of the Laborers International Union ("Laborers") concerning the erection of certain scaffolding at the Lafayette Place construction project.

Blount was the general contractor on the project and through its collective bargaining representative, Associated General Contractors, Inc. ("AGC"), Blount had entered into agreements with both the Carpenters and Laborers. Both agreements contained clauses which designated the job of erecting scaffolding as within the jurisdiction of the respective union. Both agreements also required Blount to subcontract "work covered by this agreement"

---

1. Although not designated as motions for summary judgment by the parties, the motion and opposition filed by the parties are consistent with Fed.R.Civ.P. 56 and are dispositive of this case. Therefore the court will treat the plaintiffs' motion and the Carpenters' opposition as cross motions for summary judgment.

only to companies which had also signed agreements with the respective unions.

In the course of the construction of Lafayette Place Blount subcontracted with the Anastasi Brothers Corp. ("Anastasi") for masonry work. Included in that subcontract was work involving the erection of masonry scaffolding. Anastasi was a signatory to a contract with the Laborers, but not with the Carpenters. Anastasi proceeded to assign the scaffolding work to its employees represented by the Laborers. The Carpenters objected to the assignment and engaged in a work stoppage.

The jurisdictional dispute was eventually resolved before the National Labor Relations Board (the "Board") pursuant to Section 10(k) of the National Labor Relations Act, 29 U.S.C. § 160(k). The Board found that Anastasi was the "employer" which was subjected to competing claims for the purposes of its decision. *Laborers Local 223* (Anastasi Bros., Inc.), 272 NLRB No. 111, slip op. p. 6. In other words, as far as the Board was concerned, the dispute was only among Anastasi and the two unions. Blount, as the general contractor, was not directly involved.

In the process of deciding to whom Anastasi should have assigned the scaffolding work the Board considered (1) the existence of collective bargaining agreements between the employer (Anastasi) and the unions, (2) the employer's preferences and past practices, (3) area practice, and (4) economy and efficiency of operations. A majority of the Board found that each of these factors weighed in favor of Anastasi's assignment of the work to the Laborers. *Id.* at pp. 9–12.

Prior to the commencement of the Board proceedings the Carpenters filed a grievance with Blount concerning its having subcontracted the masonry scaffolding work to Anastasi, claiming that the subcontract was a breach of Blount's agreement with the Carpenters. Soon after the Board's decision was issued the Carpenters took their grievance before an arbitrator, who found that, despite the Board decision, the Carpenters' grievance was arbitrable and set the matter down for hearing on the

merits. Blount and AGC then brought this action to restrain further arbitration.

The plaintiffs contend that the Carpenters' grievance is in reality a jurisdictional dispute and as such constitutes an impermissible attempt to circumvent the Board's decision. The Carpenters, on the other hand, argue that the dispute is purely contractual and is not preempted or controlled by the 10(k) determination. After examining the parties' memoranda and a hearing on December 20, 1984, we find that the Carpenters' position more accurately describes the nature of this dispute.

In arguing that the 10(k) determination preempts the arbitration, the plaintiffs contend that the Board implicitly decided the contract claim. Since the Board awarded the job of erection of masonry scaffolding to the Laborers such work is not "work covered by [the Carpenters'] agreement" according to the plaintiffs and is therefore not subject to that agreement's restraint on subcontracting. However, the Board's decision was much more narrow in scope. It held only that a particular employer, Anastasi, correctly awarded such work on a particular jobsite to the Laborers. The decision did not require Blount to subcontract the work to Anastasi; it did not prohibit Blount from subcontracting the work to employers who have an agreement with the Carpenters as well as the Laborers; nor did it hold that *any* subcontractor performing such work must assign it to the Laborers.

The plaintiffs do not dispute that Blount could have fulfilled their contractual obligations to *both* unions by subcontracting the scaffolding work to a subcontractor who had signed agreements with both unions just as Blount itself had done. Nor is it disputed that Blount could have retained the work for its own employees without breaching the agreements. Therefore, a decision by the arbitrator that the Carpenters' agreement was breached by Blount would not cause Blount to be subjected to conflicting requirements.

For this reason the cases cited by plaintiffs, beginning with *Carey v. Westing-*

*house Electric Corp.*, 1963, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320, which held that an employer is not liable in damages when it makes a disputed job assignment in conformity with the Board's determination are not on point. The rationale for immunizing an employer from contract liability in a jurisdictional dispute is to prevent the employer from being subjected to the "conflicting demands of two or more unions." *Associated General Contractors v. International Union of Operating Engineers, Local 701*, 9 Cir.1976, 529 F.2d 1395, 1397 ("*AGC v. Local 701*"). Blount was not an employer making job assignments to one of two rival unions: as was recognized in the Board's decision, the employer subject to conflicting demands in the present case was Anastasi. Since Anastasi is not even a party to the arbitration, an award favorable to the Carpenters would have no impact on Anastasi's assignment of the work to the Laborers.

Also inapposite are the Board decisions cited by plaintiffs. They demonstrate only that the Board treats union demands of a general contractor to arbitrate in the midst of a strike over jurisdiction as unfair labor practices in some instances. The grievances in the Board decisions were apparently without merit and designed solely to bring more pressure to bear on the beleaguered employer. See, e.g., *Carpenters Local 102* (Meiswinkel Interiors), 260 NLRB No. 120, 109 LRRM 1245 (1982); *Ironworkers Local 350* (Perini Corp.), 271 NLRB No. 183, 177 LRRM 1115 (1984). In the one case in which there was an arguably valid contract claim, a federal district court sent the matter to arbitration. *Carpenters Local 753* (Blount Bros.), 175 NLRB No. 81, 71 LRRM 1024, 1024 (1969). Here there is no ongoing jurisdictional dispute since the work has been definitively awarded to the Laborers and the Carpenters' grievance appears to have merit.

Accordingly, we find that *AGC v. Local 701, supra,* should control the disposition of this matter and that the arbitration should be permitted to go forward. Contrary to the argument of the plaintiffs, *AGC v. Local 701* is not limited merely to those situations in which a general contractor is signatory to only one relevant union agreement, but to any case in which the general contractor is not subjected to inconsistent demands by two or more union agreements. While the presence of a second union agreement may result in a jurisdictional dispute at the subcontractor level, the Carpenters may be entitled by virtue of the agreement with Blount to have entered that struggle on equal footing with the Laborers, at least to the extent of having a collective bargaining agreement with the employer.[2]

■ Since the arbitration is one dealing only with the contract right of the Carpenters to have scaffolding work done by employers who have agreements with the Carpenters and will not grant the Carpenters the right to perform work at Lafayette Place or any other construction project, it has no jurisdictional component and therefore there is no reason to make the arbitration tripartite. The Laborers have no rights at stake in the contract dispute which they are entitled to protect.

For the above reasons, the plaintiffs' constructive motion for summary judgment and the plaintiffs' and Laborers' motions to make the arbitration tripartite are denied. The Carpenters' constructive motion for summary judgment is granted.

---

2.  The presence of the Laborers' agreement and their claim to the disputed work also makes problematic the propriety of money damages, should the Carpenters request it, since it appears quite possible that the Laborers would have been awarded the work even had the alleged breach never occurred. However, the plaintiffs did not request that the remedy be limited to a "cease and desist" order and therefore the court will not discuss the problem at great length. Furthermore, we note that the question of the appropriate remedy was stipulated by the parties to be an issue for the arbitrator.