## J.F. WHITE CONTRACTING COMPANY, Plaintiff, Appellee,

v.

## LOCAL 103 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant, Appellant.

### No. 89–1030.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1989.

Decided Nov. 29, 1989.

Thomas J. Flynn, Arlington, Mass., for Local 103 Intern. Broth. of Elec. Workers.

John D. O'Reilly, III, with whom O'Reilly & Grosso, Framingham, Mass., was on brief, for J.F. White Contracting Co.

Paul F. Kelly, with whom Segal, Roitman & Coleman, Boston, Mass., was on brief, for Massachusetts Laborers' Dist. Council.

Before BREYER, Circuit Judge, COFFIN, Senior Circuit Judge, and MAYER,* Circuit Judge.

BREYER, Circuit Judge.

J.F. White Contracting Co. ("White Co.") has a contract with a group of laborers represented by Massachusetts Laborers' District Council (the "Laborers"), in which it promises to let them perform pre-cast

* Of the United States Court of Appeals for the    Federal Circuit, sitting by designation.

concrete work, trench preparation and backfilling, and the setting of pipes and conduits in trenches, on a certain Massachusetts subway rehabilitation project. It also has a contract with a group of electricians represented by the International Brotherhood of Electrical Workers Local 103 (the "Electrical Workers"), in which it promises to let them perform "any electrical work" on the same job. *See* Agreement and Working Rules Between Elec. Workers Local 103 and Electrical Contractors Ass'n. § 2.5(b). Each group claimed the right to place sections of pre-cast concrete duct *that would carry electrical wires* into a trench dug alongside some subway tracks. White Co. gave the work to the Laborers. The Electrical Workers then obtained an arbitration award requiring White Co. to give them the job. When the Laborers threatened to strike if White Co. complied with the award, White Co. obtained an NLRB determination that the Laborers should have the work. *See Massachusetts Laborers' Dist. Council (J.F. White Contracting Co.),* 290 N.L.R.B. No. 40 (July 19, 1988). On the strength of this NLRB determination, a federal district court granted White Co.'s request to vacate the arbitration award. The Electrical Workers now appeal this district court decision (vacating the arbitration award) to us.

We can find no legal error in the district court's judgment or in the reasoning of its accompanying opinion. The NLRB acted pursuant to its statutory authority when it assigned the disputed work to the Laborers. *See* NLRA § 8(b)(4)(D), 29 U.S.C. § 158(b)(4)(D) (making it an unfair labor practice for a union to strike in support of its claim to disputed work); NLRA § 10(k), 29 U.S.C. § 160(k) ("empower[ing] and direct[ing]" the Board "to hear and determine" work disputes involving strikes or threatened strikes); *NLRB v. Radio and Television Broadcast Eng'rs Local 1212,* 364 U.S. 573, 579, 81 S.Ct. 330, 334, 5 L.Ed.2d 302 (1961) (directing the NLRB to settle such disputes by making an affirmative award of the work). It is well-established law that courts are not to enforce an arbitration award that conflicts with a § 10(k) determination. *See International*

*Longshoremen's Union Local 32 v. Pacific Maritime Ass'n,* 773 F.2d 1012, 1016–17 (9th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986); *Chauffeurs Local No. 50 v. McCartin–McAuliffe Mechanical Contractor, Inc.,* 708 F.2d 313, 315 (7th Cir.1983); *International Union (UAW) v. Rockwell Int'l Corp.,* 619 F.2d 580, 582–84 (6th Cir.1980); *New Orleans Typographical Union No. 17 v. NLRB,* 368 F.2d 755, 767 (5th Cir.1966); *see also Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 267, 84 S.Ct. 401, 406, 11 L.Ed.2d 320 (1964) ("Should the Board disagree with [an] arbiter" over a jurisdictional dispute, "the Board's ruling would, of course, take precedence") (dicta); *NLRB v. Hunter Outdoor Products, Inc.,* 440 F.2d 876, 881 (1st Cir.1971) (adopting this language from *Carey*). The conflict here is plain. The NLRB determined that the "Laborers[ ] . . . are entitled to perform the handling and installation of pre-cast enclosures for electrical conduit . . . at the . . . construction project. . . ." The arbitration decision reads in its entirety:

> J.F. White Contracting, Inc. is found in violation of Article II, Section 2.5(b) & (c) of the Collective Bargaining Agreement [forbidding the "assigning . . . of any . . . electrical work to any person" other than an electrical worker] and is ordered to cease and desist in the violation of the Agreement.

The arbitration award specifically orders White Co. to take from the Laborers the very work that the NLRB has said they should have.

The Electrical Workers point to cases where courts have refused to vacate an arbitration award despite a claim by one party that the award conflicted with an NLRB decision. *See Hutter Const. Co. v. International Union of Operating Eng'rs Local 139,* 862 F.2d 641 (7th Cir.1988); *Associated General Contractors v. Boston Dist. Council of Carpenters,* 599 F.Supp. 1560 (D.Mass.1985), *later proceeding, Local 33, United Bhd. of Carpenters (Blount Bros.),* 289 NLRB No. 167 (July 29, 1988); *see also Associated General Contractors v. International Union of Operating*

*Eng'rs Local 701*, 529 F.2d 1395 (9th Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976). In none of those cases, however, did a conflict like this one exist. In *Hutter*, for example, (which is substantially identical to the other cases cited) the Seventh Circuit found "no[ ] conflict" sufficient to vacate an arbitration award. *See Hutter*, 862 F.2d at 646. But, the circumstances were as follows: A construction company signed a multiparty agreement in which it promised forklifting work to employees called "Operators" and also promised not to subcontract forklifting work to any contractor who was not a party to the agreement. The company then broke the latter promise by subcontracting forklifting work to a nonsigning firm, and that subcontractor, in turn, gave the work to Laborers rather than to Operators. After strike activity led to a § 10(k) hearing, (1) the NLRB told the subcontractor to assign the work to Laborers, and (2) arbitrators found the company had broken its "no subcontracting to nonsigners" promise and awarded the Operators back pay. We can understand how a court might have found no significant conflict on these facts, for the company could obey the arbitrators' award without interfering with the subcontractor's duty to assign forklifting work to Laborers. In our case, however, White Co. cannot abide by its agreement with the Electrical Workers (as construed by the arbitrators) without also violating the NLRB's order to assign the disputed work to the Laborers. Consequently, the facts of this case show a far more direct and serious conflict than those in *Hutter* and the other cases cited above.

Appellant also raises two arguments that, in effect, attack the validity of the Board's § 10(k) decision. Appellant points to a Massachusetts statute that says

> No person ... shall ... work at ... installing wires [or] conduits ... for carrying or using electricity ... unless such person ... shall have received a license ... issued by the state examiners of electricians....

Mass.Gen.L. ch. 141, § 1. The Board members at the § 10(k) hearing were aware of this statute, but a majority of them held that the disputed work was "not fairly considered electrical." *See Massachusetts Laborers' District Council (J.F. White Contracting Co.), supra.* Appellant, however, has obtained a ruling from the Massachusetts Board of State Examiners of Electricians that the disputed work *is* electrical within the meaning of this statute. Appellant also has found a recent case in which the Board assigned disputed work to a group of electricians after the Massachusetts State Examiners ruled that only licensed electricians could perform the work. *See Sheet Metal Workers Local 17 (Park Davis Co.)*, 296 N.L.R.B. No. 4 (Aug. 7, 1989). From this appellant concludes: (1) that the NLRB should have considered the licensing statute dispositive of the jurisdictional question, and (2) that the NLRB, by awarding the work to (presumably unlicensed) Laborers, "usurp[ed] the police power of the Commonwealth" and "illegal[ly] preempt[ed]" the Massachusetts statute.

White Co. disputes both these arguments on the merits. In respect to the first argument, it points out that in making a § 10(k) determination the Board may consider and weigh all factors that it deems relevant in light of its experience and common sense. *See Broadcast Eng'rs*, 364 U.S. 573, 582–83, 81 S.Ct. 330, 335–36, 5 L.Ed.2d 302 (1961); *International Ass'n of Machinists Lodge 1743 (J.A. Jones Constr. Co.)*, 135 N.L.R.B. 1402, 1410–11 (1962) (listing factors). As to the second argument, it denies any 'usurpation' or 'preemption,' for it says that the NLRB decision does not free the Laborers from any proper licensing requirement that state law may mandate, including a requirement to obtain an electrical license.

Whatever the merits of these two legal issues, we cannot decide them, for it is well established that "N.L.R.B. determinations under section 10(k) are not directly reviewable in this or any other court." *International Union of Operating Engineers v. Sullivan Transfer*, 650 F.2d 669, 678 (5th Cir.1981); *see Henderson v. ILWU Local 50*, 457 F.2d 572, 577–78 (9th Cir.), *cert. denied sub nom. Pacific Maritime Ass'n*

v. *NLRB*, 409 U.S. 852, 93 S.Ct. 65, 34 L.Ed.2d 95 (1972); *New Orleans Typographical Union No. 17*, 368 F.2d at 762. To obtain review of such a decision, a party must fail to comply, thereby precipitating an "unfair labor practice" proceeding in which the § 10(k) award becomes important evidence. When that proceeding culminates, as it must, in a final order, the disappointed party can bring the order into court and challenge the underlying § 10(k) determination. *See* NLRA § 10(f), 29 U.S.C. § 160(f) (providing for review in the courts of appeals of "a final order of the Board"); *Sullivan Transfer*, 650 F.2d at 675 (explaining that a § 10(k) determination is unreviewable because it is not a "final order" of the Board) (citing *NLRB v. Plasterers' Union No. 79*, 404 U.S. 116, 126–27, 92 S.Ct. 360, 367–68, 30 L.Ed.2d 312 (1971)). This is the same kind of procedure that an employer must follow when he believes, for example, that an NLRB union certification is unlawful. *See American Federation of Labor v. Labor Board*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940) (holding that certification orders are not directly reviewable in the courts of appeal). An extremely narrow exception is made to the nonreviewability of nonfinal NLRB decisions where the decision is manifestly "in excess of [the Board's] delegated powers and contrary to a specific prohibition in the [NLRA]." *Leedom v. Kyne*, 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958). Appellant, however, does not allege the type or magnitude of error that would warrant our making an exception in this case. *See Dart v. United States*, 848 F.2d 217, 222 (D.C.Cir.1988) (*Leedom* exception applies only where agency action is facially invalid); *United States v. Feaster*, 410 F.2d 1354, 1368 (5th Cir.1969) (*Leedom* exception applies only where Board's determination "is infused with error which is of a *summa* or *magna* quality as contraposed to decisions which are simply *cum* error") (reviewing National Mediation Board decision).

Finally, appellant asks that the "Employer be ordered to pay sufficient damages to offset the wrongful assignment of work to the Laborers." The matter before us, however, is simply whether the district court properly vacated an arbitrators' award that ordered the employer to "cease and desist" from giving the Laborers the work. We do not see how that invalid award, by itself, can provide a basis for the court to award damages. *Cf. Pacific Maritime Ass'n*, 773 F.2d at 1015; *Sullivan Transfer*, 650 F.2d at 677; *Rockwell Int'l Corp.*, 619 F.2d at 585; *Oil Workers Local 7–210 v. Union Tank Car Co.*, 475 F.2d 194, 197 (7th Cir. 1973).

For these reasons the judgment of the district court is

*Affirmed.*