**LOCAL UNION # 9 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN, AFL–CIO–CLC, Plaintiff,**

v.

**CARLTON, INC., Defendant.**

Civ. A. No. 2:93–1175.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 3, 1994.

---

Carl E. Hostler, Charles F. Donnelly, Hostler Law Offices, Charleston, WV, for plaintiff.

Fred F. Holroyd, Holroyd & Yost, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the parties' cross motions for summary judgment.[1] Plaintiff ("the Brick-

---

1. Although defendant's motion is captioned as a motion to dismiss, defendant has presented and

layers") brought this action pursuant to the provisions of § 301 of the National Labor Relations Act, 29 U.S.C. § 185,[2] alleging defendant ("Carlton") had failed to process a grievance to arbitration in violation of a collective bargaining agreement. Carlton argues the Bricklayers' action is barred by a decision of the National Labor Relations Board ("NLRB") which resolved certain issues arising out of this dispute. *United Bhd. of Carpenters, Local Union No. 1207*, 313 N.L.R.B. No. 4, 144 L.R.R.M., 1993 WL 491803 (BNA) 1288 (Nov. 23, 1993). For the following reasons, the Court **GRANTS** the Bricklayers' motion for summary judgment and **DENIES** Carlton's motion for summary judgment.

## I.

The facts of this case are undisputed. Carlton, a general contractor in the building and construction industry, is signatory to conflicting collective bargaining agreements with the Bricklayers and the United Brotherhood of Carpenters and Joiners of America, Local Union No. 1207 ("the Carpenters"). Both agreements cover tilesetting work. Carlton's agreement with the Bricklayers prohibits Carlton from subcontracting work covered by the agreement unless the subcontractor agrees in writing to be bound by the terms of the Carlton–Bricklayers agreement. Carlton's contract with the Carpenters also prohibits subcontracting of covered work unless the subcontractor is signatory to an agreement with the Carpenters or unless the subcontractor agrees to be bound by the terms of the Carlton–Carpenters agreement.

In July, 1992, the State of West Virginia contracted with Carlton for construction of the Mount Olive Correctional Facility in Fayette County, West Virginia. Carlton executed a subcontracting agreement with Campbell Tile Company ("Campbell"), a tile specialty operation, for tile work at the facility.[3] In early July, 1993, Campbell began tilesetting work at the facility using employees represented by the Carpenters.

When it learned Carlton had subcontracted the tilesetting work to Campbell, the Bricklayers became concerned Carlton had violated the subcontracting clause of the Carlton–Bricklayers collective bargaining agreement. Unable to resolve the issue informally, the Bricklayers filed a grievance against Carlton alleging the company had violated the Carlton–Bricklayers agreement. The Bricklayers notified Carlton of the grievance by letter dated September 3, 1993. The letter identified the specific portions of the Carlton–Bricklayers agreement the company had allegedly violated and indicated the Bricklayers sought "wages, fringes, and any other monetary losses due to the wilful violations" of Carlton. The grievance was set for arbitration.[4]

In the meantime, the Carpenters received notice the Bricklayers claimed it was entitled to perform the tilesetting work. The Carpenters informed Campbell by letter dated July 13, 1993, that it expected Campbell to honor the Campbell–Carpenters contract, and that if Campbell did not assign the tilesetting work accordingly, the Carpenters would picket the Mount Olive jobsite. Construing the Carpenters' threat to picket as a violation of § 8(b)(4)(D) of the National La-

---

the Court has considered matters outside the pleadings. In accordance with *Rule* 12(b), Fed. R.Civ.P., the Court will treat defendant's motion as one for summary judgment.

**2.** 29 U.S.C. § 185 provides in relevant portion: "Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

**3.** After entering into the subcontract with Carlton, but before beginning work on the project, Campbell signed a collective bargaining agreement with the Carpenters covering, *inter alia*, tilesetting work.

**4.** The Carlton–Bricklayers agreement specifically provided that disputes concerning the subcontracting provision would be processed "in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes."

bor Relations Act, 29 U.S.C. § 158(b)(4)(D),[5] Carlton and Campbell initiated a § 10(k) proceeding [6] before the NLRB, charging the Carpenters with an unfair labor practice.

Carlton refused to proceed on the Bricklayers' grievance until the NLRB had resolved the § 10(k) charge. The Bricklayers filed a charge against Carlton with the NLRB contesting the company's refusal to submit the grievance to arbitration. By letter dated October 4, 1993, the NLRB informed the Bricklayers it would not proceed on the charge, having concluded Carlton's refusal to arbitrate was justified, because "the issues raised by the instant charge are intimately related to the jurisdictional dispute issues now pending before the Board." The NLRB issued its decision on the § 10(k) charge on November 23, 1993, awarding the tilesetting work to the Campbell employees, based on "the factors of collective bargaining agreements and employer preference and past practice."

In this action, the Bricklayers contends it is entitled to arbitration as a contractual remedy for Carlton's alleged breach of the Carlton–Bricklayers agreement, notwithstanding the NLRB's award of the tilesetting work to the Carpenters. Carlton argues the subcontracting grievance was a jurisdictional dispute and was resolved by the NLRB in its decision on the § 10(k) charge.

## II.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." *Rule* 56(c), Fed.R.Civ.P. It is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), nor is it appropriate "even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn therefrom." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979) (quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.1951)); *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991).

Where the party opposing summary judgment would have the burden of proof at trial, that party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be accorded the benefit of all favorable legal theories invoked by the evidence considered. *Charbonnages*, 597 F.2d at 414. Where states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie. *Charbonnages*, 597 F.2d at 414. Summary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the elements necessary to his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A party seeking summary judgment has the initial burden of showing the information that it believes demonstrates absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

## III.

Jurisdictional disputes [7] between unions have long been the source of much

---

**5.** Section 8(b)(4)(D) of the National Labor Relations Act prohibits labor organizations from employing threats or work stoppages in order to obtain work claimed by another labor organization.

**6.** A § 10(k) proceeding is a hearing conducted by the NLRB pursuant to § 10(k) of the National Labor Relations Act, 29 U.S.C. § 160(k). In order to conduct a § 10(k) hearing, the NLRB must find that there is reasonable cause to believe that a § 8(b)(4)(D) violation has occurred. Once the

NLRB determines that there is reasonable cause to believe that a violation has occurred, it conducts a hearing to determine which labor organization is entitled to the disputed work. If the NLRB concludes the organization charged with the § 8(b)(4)(D) violation had the superior claim to the work, it will dismiss the unfair labor practice charge.

**7.** A jurisdictional dispute is "a dispute between two or more groups of employees over which is entitled to do certain work for an employer."

strife, particularly in the construction industry.[8] Before 1947, jurisdictional feuds often resulted in lengthy work stoppages, with the employer caught in the middle. *The Developing Labor Law* 1366–67 (Patrick Hardin, et al. eds., 3d ed. 1992). Sections 8(b)(4)(D) and 10(k) of the Taft–Hartley Act of 1947 prohibited as unfair labor practices union activities in support of demands that particular work be assigned to members of particular labor organizations. *Id.* Section 10(k) of the Act empowered the NLRB to hear and resolve jurisdictional disputes where one of the parties to the dispute is charged with an unfair labor practice under § 8(b)(4)(D).

It is well established courts may not enforce an arbitration award that conflicts with a § 10(k) determination. *See, e.g., Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964); *J.F. White Contracting v. Local 103 IBEW*, 890 F.2d 528, 529 (1st Cir.1989); *New Orleans Typographical Union No. 17 v. NLRB*, 368 F.2d 755, 767 (5th Cir.1966). So far as actual assignment of the work to one union or the other is concerned, a § 10(k) determination is final. *Associated Gen. Contractors v. Int'l Union of Operating Engineers, Local 701*, 529 F.2d 1395, 1397 (9th Cir.1976), *cert. denied*, 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976). Nevertheless, to the extent an arbitration award does not conflict with a § 10(k) decision arising from the same dispute, the award would be enforceable. *Hutter Const. v. Operating Engineers, Local 139*, 862 F.2d 641, 645 (7th Cir.1988); *Carpenters Local 33*, 289 N.L.R.B. 1482, 1988 WL 213975 (1988).

## IV.

■ In this case, Carlton allegedly violated the terms of its collective bargaining agreement with the Bricklayers by subcontracting with a company that had not agreed to comply with the terms of the Carlton–Bricklayers agreement. This contractual dispute is a distinct, nonjurisdictional claim

separable from the jurisdictional issue decided by the NLRB. *Hutter Const.*, 862 F.2d at 644. The NLRB's determination rested on Campbell's collective bargaining agreement with the Carpenters, *inter alia*, and did not address the alleged breach at issue in this case. The NLRB noted:

> Bricklayers also contends that its collective-bargaining agreement with Carlton encompasses the disputed work. Assuming arguendo that the disputed work is encompassed by Bricklayers' agreement with Carlton, this factor would not be relevant to the determination of this dispute. Under these circumstances, the Board has determined that it is the subcontractor's collective-bargaining agreements, and not those of the general contractor, that are relevant....

*United Bhd. of Carpenters, Local Union No. 1207*, 313 N.L.R.B. No. 4, n. 6, 1993 WL 491803 (Nov. 23, 1993).

The grievance at issue here arose at the moment Carlton contracted with Campbell. *Hutter Const.*, 862 F.2d at 644. Characterization of the dispute as jurisdictional in nature to foreclose arbitrability would allow Carlton to circumscribe the subcontracting and arbitration provisions of its collective bargaining agreement with the Bricklayers unjustly.

Carlton argues submission of this dispute to arbitration would be fruitless because an award in the Bricklayers' favor would be unenforceable, while an award in favor of Carlton would change nothing. Certainly, the NLRB's 10(k) decision would preclude the Bricklayers from forcing the use of employees it represents on the disputed tilesetting work. The Board decision, however, does not prevent the Bricklayers from asserting their contractual rights against Carlton, including possible monetary damages for breach of contract. *Carpenters Local 33*, 289 N.L.R.B. 1482, 1988 WL 213975 (1988); *As-*

---

*NLRB v. Radio Engineers*, 364 U.S. 573, 579, 81 S.Ct. 330, 334, 5 L.Ed.2d 302 (1961).

8. In 1975, one commentator labeled such disputes the biggest problem in the building trades. "The carpenters, for instance, take the attitude that Jesus Christ was a carpenter and that they

were here first, so the rest of you guys stand in line." Douglas Leslie, *The Role of the NLRB and the Courts in Resolving Union Jurisdictional Disputes*, 75 Colum.L.Rev. 1470 (1975) (citing Johnson & Kotz, *The Unions*, Washington Post, April 15, 1972, at 1, col. 3).

*sociated Gen. Contractors,* 529 F.2d at 1398. That question was not before the NLRB and was not decided by it. The rationale for preemption, avoiding the creation of conflicting or incompatible standards of conduct, *Vaca v. Sipes,* 386 U.S. 171, 180–81, 87 S.Ct. 903, 911–12, 17 L.Ed.2d 842 (1967), is not present here. *Associated Gen. Contractors,* 529 F.2d at 1398.

Contrary to Carlton's assertions, *Carey v. Westinghouse,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), is not authority for denying the Bricklayers the opportunity to pursue their grievance. As the NLRB has observed, the Supreme Court in *Carey* "held that a union *is* entitled to arbitrate an issue even though the dispute could involve matters within the Board's jurisdiction such as a work jurisdiction claim." *Carpenters Local 33,* 289 N.L.R.B. 1482, 1988 WL 213975 (1988) (Emphasis in original). The NLRB's decision in this case simply awarded the tile-setting work to employees represented by the Carpenters. By its own terms, the decision "is limited to the controversy that gave rise to this proceeding." It did not reach the distinct contractual claim which is the subject of this action.

Accordingly, the Court **ORDERS** Carlton to process the Bricklayers' grievance to arbitration in accordance with the terms of the Carlton–Bricklayers collective bargaining agreement. This matter is **DISMISSED** and stricken from the docket.