USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1148

 T. EQUIPMENT CORP. and C.R.C. CO., INC.,

 Plaintiffs, Appellees,

 v.

 MASSACHUSETTS LABORERS' DISTRICT COUNCIL,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Joseph L. Tauro, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 Theodore T. Green, with whom Michael S. Bearse, Michelle
Simon, Laborers' International Union of North America, were on
brief for appellant.

 James F. Grosso with whom O'Reilly & Grosso, P.C. were on
brief for appellees.

January 15, 1999

 
 BOWNES, Senior Circuit Judge. This is an appeal from the
district court's grant of summary judgment to plaintiffs-appellees
T. Equipment Corporation and C.R.C. Co., Inc. (Contractors) and its
denial of defendant-appellant's Massachusetts Laborers' Union
District Council (Laborers) motion for summary judgment. The case
arises from a jurisdictional dispute between Local 24 of the
Carpenters Union (Carpenters) and the Laborers about the allocation
of "stripping" work for plaintiffs-contractors. The issue before
us has not been directly addressed before by this circuit: What is
the consequence of an arbitration award for damages to one union
(Laborers) because of the breach of a collective bargaining
agreement by the employers of members of that union in the face of
an NLRB decision under 29 U.S.C.A. 160(k)(10(k)) awarding the
underlying work to another union (Carpenters)? The district court
found that the NLRB 10(k) decision nullified the damages award. 
We affirm.
 I
 The facts are not in dispute. The plaintiffs-contractors
were subcontractors to J.F. White Contracting Company. White was
the main contractor for the construction of new railroad stations
and the renovation of railroad bridges to facilitate the extension
of commuter rail service on the Old Colony Railway. T. Equipment's
subcontract required bridge repair and structural work on the rail
system. C.R.C.'s subcontractual work entailed building the
substructural concrete foundations for the railroad stations. Both
subcontracts involved extensive concrete work. Casting concrete
requires the use of wood or metal forms into which the concrete is
poured. After the concrete has hardened sufficiently so that it
can stand on its own, the forms are "stripped" from the concrete
and moved to the site of the next job.
 There was a long-standing collective bargaining agreement
between the Massachusetts Contractors Association and the Laborers 
to the effect that "stripping" would be done jointly by members of
the Carpenters' and Laborers' Unions. The latest manifestation of
this agreement was a letter from the Laborers' Union representative
to J.F. White dated October 7, 1994, stating: "It was also agreed
that the stripping of concrete forms is to be in a manner of equal
numbers . . . [equal numbers of members of the Carpenters' and
Laborers' Unions]."
 The portion of the construction project giving rise to
the work dispute began in May of 1995 and was completed in May of
1996. The site of the work was a railroad station in Weymouth,
Massachusetts. The work for Contractor C.R.C. was mainly that of
erecting concrete footings. Its crew for this work consisted of
two carpenters and two laborers. The carpenters erected forms for
the footings and stripped the forms from the concrete after it had
hardened. The laborers cleared and oiled the forms and carried
them to the next construction point. On several occasions in June
of 1995 the laborers assisted the carpenters in stripping the
forms. In late June the Carpenters complained to the C.R.C. labor
foreman that the stripping should be done by the carpenters. The
Laborers promptly countered that the stripping should be done with
at least fifty percent laborers.
 About the end of June 1995, C.R.C. began pouring concrete
for retaining walls which were much larger than the footings it had
previously constructed. C.R.C. added two carpenters and two
laborers to its crew. The Laborers, through its business manager,
demanded that C.R.C. officially assign the stripping of forms to a
crew composed equally of carpenters and laborers. The same demand
was made of T. Equipment. On June 30, 1995, C.R.C. formally
assigned the work of erecting and stripping forms to members of the
Carpenters' Union and the work of cleaning, oiling, and moving the
forms to the next job site to members of the Laborers' Union.
 On the next day of work, July 5, carpenters began to
strip forms from one retaining wall. Two members of the Laborers'
Union climbed the wall and began to assist in the stripping. The
job foreman for C.R.C. told the laborers to come down from the
wall; they refused to do so. The carpenters stopped stripping and
refused to continue. The police were called and removed the
laborers from the job site.
 On July 21, 1995, the Laborers filed a contractual
grievance against both C.R.C. and T. Equipment (plaintiffs in this
action). The Laborers alleged breach of the collective bargaining
agreement between the Union and the main contractor, J.F. White. 
Arbitration was requested and an arbitration hearing was scheduled
for November 14, 1995. On November 9, the Carpenters informed
C.R.C. and T. Equipment that if the carpenters were removed from
the stripping work, they would be pulled from the site and the
Union would no longer refer carpenters to C.R.C. or T. Equipment.
 On the day of the scheduled arbitration hearing, C.R.C.
and T. Equipment filed an unfair labor practice charge with the
National Labor Relations Board (NLRB or Board) against the
Carpenters' Union. They alleged, in effect, that the Carpenters
had threatened to refuse to work and engaged in other illegal
activity because of the stripping dispute. The Contractors'
counsel appeared before the arbitrator and took the position that
the filing of an unfair labor practice charge with the NLRB
deprived the arbitrator of jurisdiction. This resulted in a delay
of the arbitration proceeding. The hearing terminated, after two
days, on July 2, 1996. 
 The NLRB proceeded promptly under section 10(k) of the
National Labor Relations Act to hear the dispute. On October 30,
1996, it issued its determination:
 After considering all the relevant factors,
 we conclude that employees represented by the
 Carpenters are entitled to perform the work in
 dispute. We reach this conclusion relying on
 the factors of collective-bargaining
 agreements, company preference and past
 practice, relative skills and safety, and
 economy and efficiency of operations. In
 making this determination, we are awarding the
 work to employees represented by the
 Carpenters, not to that Union or its members. 
 The determination is limited to the project
 known as the Old Colony Railway.

 DETERMINATION OF DISPUTE

 The National Labor Relations Board makes
 the following Determination of Dispute.

 Employees of T. Equipment Corporation and
 C.R.C. Co., Inc. represented by Local 624,
 United Brotherhood of Carpenters and Joiners
 of America, AFL-CIO are entitled to perform
 stripping of reusable panel forms on the Old
 Colony Railway project.

 Dated, Washington, D.C. October 30, 1996

 The arbitrator issued his opinion on November 4, 1996. 
He was fully aware of the NLRB's decision; see first paragraph
below. The pertinent parts of the arbitrator's opinion follow.
 The Employers suggest that the 1988 NLRB
 decision in Hawkins should control the
 question of arbitrability because the
 carpenters were awarded stripping work in 
 [the NLRB] proceeding. However, this
 arbitration arises under the parties'
 collective bargaining agreement and concerns
 the parties' rights and obligations under this
 contract. My responsibility as arbitrator is
 to interpret and apply the parties' Agreement
 to the disputed stripping assignment. It may
 also be significant that the laborers union
 seeks an award of damages rather than an award
 of work so there should be no direct conflict
 between this award and the NLRB decision(s). 
 Therefore, under the clear and unambiguous
 language of the Agreement, I must find the
 grievance to be arbitrable.

 All of this evidence supports the conclusion
 that the collective bargaining agreement was
 intended to have stripping of concrete forms
 performed by a composite crew of carpenters
 and laborers. This did not occur when the
 Employers assigned all actual stripping work
 to the carpenters. Therefore, I find that
 this assignment violated the Agreement.

 As remedy, the grievants are entitled to be
 made whole for lost wages and benefits. At
 the Union's request I will retain jurisdiction
 over calculation of the damages for a period
 of 120 days should the parties be unable to
 agree amongst themselves.

 Plaintiff-Contractors then sought a vacatur of the
arbitration award in the district court, which the district court
granted. This appeal followed. 
 II
 Before examining the cases, we think it is advisable to
set forth the section of the statute under which the NLRB initially
proceeds in a work assignment labor dispute between unions. 29
U.S.C. 160(k) (also known as 10(k)) provides:
 (k) Hearings on jurisdictional strikes
 Whenever it is charged that any person has
 engaged in an unfair labor practice within the
 meaning of paragraph (4)(D) of section 158(b)
 of this title, the Board is empowered and 
 directed to hear and determine the dispute out
 of which such unfair labor practice shall have
 arisen, unless, within ten days after notice
 that such charge has been filed, the parties
 to such dispute submit to the Board
 satisfactory evidence that they have adjusted,
 or agreed upon methods for the voluntary
 adjustment of, the dispute. Upon compliance
 by the parties to the dispute with the
 decision of the Board or upon such voluntary
 adjustment of the dispute, such charge shall
 be dismissed.

 We start our analysis of the case law with the relevant
Supreme Court cases. None of them directly address the issue
before us, but they are a necessary part of the framework of our
decision.
 In National Labor Relations Bd. v. Radio & Television
Broad. Engr's Union, 364 U.S. 573, 579 (1961), the Court held:
 We agree with the Second, Third and Seventh
 Circuits that 10(k) requires the Board to
 decide jurisdictional disputes on their merits
 and conclude that in this case that
 requirement means that the Board should
 affirmatively have decided whether the
 technicians or the state employees were
 entitled to the disputed work.

 Carey v. Westinghouse Elec. Corp., 375 U.S. 261 (1964),
is the Supreme Court case closest to ours. The Court pointed out
that the Act and its remedies for disputes by labor unions over
work assignments "come into play only by a strike or threat of a
strike. Such conduct gives the Board authority under 10(k) to
resolve the strike." Id. at 263-64.
 The Court gave its blessing to arbitration:
 Since 10(k) not only tolerates but
 actively encourages voluntary settlements of
 work assignment controversies between unions,
 we conclude that grievance procedures pursued
 to arbitration further the policies of the
 Act. 

Id. at 266. Indeed, the Board often stays its own 10(k)
proceeding pending the outcome of an arbitration. See Carey, 375
U.S. at 271. The Court discussed the interplay between arbitration
and a Board proceeding:
 If by the time the dispute reaches the
 Board, arbitration has already taken place,
 the Board shows deference to the arbitral
 award, provided the procedure was a fair one
 and the results were not repugnant to the Act.

Id. (footnotes omitted).

 Finally, for our purposes, the Court held:

 Should the Board disagree with the arbiter,
 by ruling, for example, that the employees
 involved in the controversy are members of one
 bargaining unit or other, the Board's ruling
 would, of course, take precedence; and if the
 employer's action had been in accord with that
 ruling, it would not be liable for damages
 under 301.

Id. at 272 (emphasis added).

 We end our survey of Supreme Court cases with a quote
summarizing the history and purpose of 10(k):
 In 1947 Congress responded to the labor
 unrest caused by jurisdictional disputes by
 adding 8(b)(4)(D) to the National Labor
 Relations Act, which made it an unfair labor
 practice for a labor organization to induce
 the employees of any employer to strike in the
 hopes of forcing an employer to assign
 particular work to employees in a particular
 labor organization. In the belief that
 resolution of jurisdictional disputes was more
 important to industrial peace than the
 imposition of unfair labor practice sanctions,
 NLRB v. Radio Engineers, 364 U.S. 573, 576-577
 (1961) (hereinafter CBS), Congress at the same
 time enacted 10(k), 29 U.S.C. 160(k), to
 induce unions to settle their differences
 without awaiting unfair labor practice
 proceedings and enforcement of Board orders by
 courts of appeals.

International Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec.
Workers, 419 U.S. 428, 430-31 (1975) (footnotes omitted).
 Unfortunately, it is now obvious that the enactment of
 10(k) has not met the expectation that it would significantly
reduce unfair labor practice proceedings and enforcement of Board
orders by courts of appeals. It could be argued that the number of
cases in this area has increased because of the tension between
arbitration awards and 10(k) determinations. As the cases
illustrate, the union that loses the arbitration hearing can obtain
a 10(k) hearing before the NLRB by committing or threatening to
commit an unfair labor practice.
 Our circuit previously grappled with the arbitration
award 10(k) problem in J.F. White Contracting Co. v. Local 103
Int'l Bhd. of Elec. Workers, 890 F.2d 528 (1st Cir. 1989). The
case ascended the same procedural ladder as the one now before us. 
The contractor employer gave laborers the right to handle and
install precast enclosures for electrical conduits at a
construction site. The electricians initiated arbitration
proceedings and obtained an arbitration award assigning them the
work. The employer proceeded before the NLRB which made a 10(k)
decision that the laborers were entitled to the work. The employer
then filed an action in the district court which vacated the
arbitration award. In an opinion written by then Circuit Judge
Breyer (now an Associate Justice on the United States Supreme
Court), we affirmed. The court held that under well-established
law "courts are not to enforce an arbitration award that conflicts
with a 10(k) determination." Id. at 529 (citations omitted). We
found that the conflict between the arbitration award and the
 10(k) determination was "plain." Id.
 In the decision, Judge Breyer discussed cases where
courts of appeals had refused to vacate an arbitration award
despite a claim by one party that it conflicted with an NLRB
decision. He gave particular attention to Hutter Constr. Co. v.
International Union of Operating Eng'rs, Local 139, 862 F.2d 641
(7th Cir. 1988). Because Hutter is one of the main cases relied
upon by appellant Laborers, we quote Judge Breyer's treatment of
it, albeit it is dictum.
 A construction company signed a multiparty
 agreement in which it promised forklifting
 work to employees called "Operators" and also
 promised not to subcontract forklifting work
 to any contractor who was not a party to the
 agreement. The company then broke the latter
 promise by subcontracting forklifting work to
 a nonsigning firm, and that subcontractor, in
 turn, gave the work to Laborers rather than to
 Operators. After strike activity led to a
 10(k) hearing, (1) the NLRB told the
 subcontractor to assign the work to Laborers,
 and (2) arbitrators found the company had
 broken its "no subcontracting to nonsigners"
 promise and awarded the Operators back pay. 
 We can understand how a court might have found
 no significant conflict on these facts, for
 the company could obey the arbitrators' award
 without interfering with the subcontractor's
 duty to assign forklifting work to Laborers. 
 In our case, however, White Co. cannot abide
 by its agreement with the Electrical Workers
 (as construed by the arbitrators) without also
 violating the NLRB's order to assign the
 disputed work to the Laborers. Consequently,
 the facts of this case show a far more direct
 and serious conflict than those in Hutter and
 the other cases cited above.

Id. at 530 (emphasis added). 

 Judge Breyer also clarified the role of 10(k) in NLRB
proceedings.
 N.L.R.B. determinations under section 10(k)
 are not directly reviewable in this or any
 other court. . . . To obtain review of such a
 decision, a party must fail to comply, thereby
 precipitating an "unfair labor practice"
 proceeding in which the 10(k) award becomes
 important evidence. When that proceeding
 culminates, as it must, in a final order, the
 disappointed party can bring the order into
 court and challenge the underlying 10(k)
 determination.

Id. at 530-31 (citations omitted). 
 The Supreme Court precedents and this circuit's case of
J.F. White Contracting Co., 890 F.2d 528, establish that a 10(k)
decision trumps an arbitrator's award if the two conflict. Neither
the Supreme Court nor this circuit has addressed whether a 10(k)
decision should nullify an arbitrator's award when the arbitrator
awards damages to one union and the 10(k) decision allocates the
work to the other union.
 Although it is clear that a 10(k) decision will trump
an arbitrator's award in a case of conflict, the circuits are not
in agreement as to what constitutes such a conflict. The appellant
here argues that its arbitration award does not conflict with the
 10(k) decision because the arbitrator only awarded money damages
to the Laborers, whereas the Board only awarded the disputed work
to the Carpenters. The leading case on which the appellant relies
for this position is Hutter, 862 F.2d 641.
 In Hutter, the Seventh Circuit affirmed the district
court's approval of an arbitrator's decision awarding the
Operators' Union damages for Hutter Construction Company's breach
of a collective bargaining agreement despite the fact that the NLRB
in a 10(k) determination ruled that the other union, Laborers,
should be assigned the work.
 The court acknowledged that when an arbitration award
conflicts with an NLRB decision, the NLRB decision takes
precedence. The court concluded, however, that the arbitrator's
award and the NLRB determination were consistent remedies. The
court reasoned as follows:
 The NLRB's task and frame of reference at the
 10(k) hearing was far different from the
 arbitrator's. The Board had to determine the
 relative merit of the Operators' claim to the
 forklift work when compared with the claims of
 another union, not the merits of the
 Operators' claim against Hutter.

Id. at 645.
 The Seventh Circuit re-affirmed Hutter in Miron Constr.
Co., Inc. v. International Union of Operating Eng'rs, Local 139, 44
F.3d 558 (7th Cir. 1995). 
 The Ninth Circuit discussed the interplay between an
arbitration award and a 10(k) determination in Sea-Land Serv.,
Inc. v. International Longshoremen's and Warehousemen's Union,
Locals 13, 63, and 94, 939 F.2d 866 (9th Cir. 1991). It concluded:
 The NLRB, at least in its jurisdictional
 dispute-resolution capacity, is simply not an
 arbiter of collective bargaining agreement
 disputes. To allow the NLRB to supersede
 arbitration awards beyond what is needed to
 resolve the specific jurisdictional dispute at
 issue would undermine Congress's intent
 regarding the role of arbitration. See Carey v. Westinghouse Elec. Corp., 375 U.S. 261,
 265, 84 S. Ct. 401, 405-06, 11 L. Ed. 2d 320
 (1964) ("The underlying objective of the
 national labor laws is to promote collective
 bargaining agreements and to help give
 substance to such agreements through the
 arbitration process.") (quotation omitted). 
 An NLRB 10(k) determination takes precedence
 over an arbitration award, but only to the
 extent necessary to effectuate the 10(k)
 determination.

Id. at 873.
 Despite the support Hutter and Sea-Land Serv. may provide
for the appellant's position, there is another line of cases
holding that a 10(k) determination awarding work to one union
conflicts with an arbitration award in favor of another union,
regardless of whether the arbitrator's award is couched in terms of
damages or work assignment. Thus, even in situations materially
indistinguishable from the instant one, these cases hold that the
 10(k) decision nullifies the arbitration award.
 The Third Circuit trenchantly explained this approach in Local 30, United Slate, Tile and Composition Roofers, Damp and
Waterproof Workers Ass'n, AFL-CIO v. National Labor Relations Bd., 
1 F.3d 1419 (3d Cir. 1993). In this case the employer (Gundle)
filed an unfair labor practice charge against the Union. The NLRB
issued a complaint against the Union alleging that picketing and 
the Union's continued maintenance of its suit to enforce the
arbitration award, which had awarded the Union damages against the
employer, constituted an unfair labor practice.
 The Third Circuit upheld the NLRB, holding there was
substantial evidence to support the NLRB's finding that the Union
picketing had an unlawful objective and that, under the National
Labor Relations Act, maintenance of a suit to enforce the
arbitration award for pay-in-lieu of work was an unfair labor
practice.
 In the course of its opinion, the court held, "The
distinction Local 30 seeks to draw between seeking the work and
seeking payment for the work is ephemeral." Id. at 1427. 
 As support for this finding, it stated:
 Any other result would be inconsistent with
 Carey v. Westinghouse Electric Corp., 375 U.S.
 261, 268, 84 S. Ct. 401, 407, 11 L. Ed. 2d 320
 (1964), where the Supreme Court held that a
 Board ruling on a representational issue would
 protect the employer from liability for
 damages for breach of a collective bargaining
 agreement as long as the employer's actions
 were consistent with the Board's decision.

Id. at 1427.

 The Third Circuit considered and expressly rejected
Hutter, in clear and unmistakable language:
 Whether or not the holding in Hutter is
 distinguishable from the issue presented here,
 as the Board suggests, we do not accept the
 distinction made in that case between a
 section 10(k) award based on noncontractual
 factors and an arbitral award of damages based
 on a contractual claim to the work. 

 . . . .

 We also agree with the Board that if a
 union is permitted to recover damages for work
 awarded to another union in a section 10(k)
 proceeding, the policy underlying section
 8(b)(4)(ii)(D) of protecting employers from
 the detrimental economic impact of
 jurisdictional disputes would be severely
 undermined.

Local 30 etc., 1 F.3d at 1428.

 The Third Circuit reaffirmed its position in United Union
of Roofers, Waterproofers and Allied Workers, Local Union No. 30 v.
Gundle Lining Constr. Corp., 1 F.3d 1429, 1430 (3d Cir. 1993). It
stated tersely: "We declined to adopt the distinction proposed by
Local 30 between seeking payment for work and seeking the work
itself." Id.
 In language which the district court here partially
adopted, the Court of Appeals for the D.C. Circuit held:
 We think the section 10(k) award trumps the
 collective bargaining agreement. The Supreme
 Court long ago, in Carey v. Westinghouse Elec.
 Corp., 375 U.S. 261 (1964), held that a union
 could file a grievance and compel arbitration
 of a dispute with a contracting employer even
 if the dispute was jurisdictional. If the
 dispute continued after arbitration and caused
 a section 8(b)(4)(D) charge (no such charge
 was brought in Westinghouse), the Board could
 give the arbitrator's award that weight it
 thought appropriate. However, "[s]hould the
 Board disagree with the arbiter . . . the
 Board's ruling would, of course, take
 precedence. . . . The superior authority of
 the Board may be invoked at any time." Id. at
 272.

International Longshoremen's and Warehousemen's Union v. National
Labor Relations Bd., 884 F.2d 1407, 1413 (D.C. Cir. 1989) (emphasis
added).
 The Sixth Circuit in International Union, United Auto.,
Aerospace and Agric. Implement Workers (UAW) and its Local 1519 v.
Rockwell Int'l Corp., 619 F.2d 580 (6th Cir. 1980), has also held,
in an analogous situation, that an arbitrator's award must give way
to an NLRB determination.
 We agree with the district court's holding
 that when an employer has been acting in
 accord with an ultimate NLRB 10(k) ruling,
 it is not liable for damages to the
 disappointed union.

Id. at 584.
 We have referred to the important cases setting forth the
opposing points of view on the issue before us. We are also
cognizant of the criticism by labor law observers that the NLRB's
work award in virtually every case coincides with the employer's
preference. See N.L.R.B. v. International Longshoremen's and
Warehousemen's Local No. 50, 504 F.2d 1209, 1220 (9th Cir. 1974), 
in which the Ninth Circuit stated:
 Most observers who have systematically
 studied the Board's 10(k) decisions agree
 that the Board's statement that no factor is
 necessarily more important than any other is
 simply false. Our own independent review of
 the Board's 10(k) decisions reveals that the
 commentators are correct in concluding that
 the Board's work award coincides 'in virtually
 every case' with the employer's preference. 
 [FN 7]

We think it necessary to quote footnote 7, which cites to the
studies made.
 C. Morris, The Developing Labor Law, 1972
 Supplement at 136 (1972). This is a
 consistent occurrence despite the Board's
 protestations that employer preference is only
 one factor among the many to be considered. 
 See Local 38, IBEW (Cleveland Illuminating
 Co.), 137 N.L.R.B. 1719, 1722 (1962). Every
 survey undertaken of Board 10(k) decisions
 bears out this conclusion. See Atleson,
 supra, note 6 at 117, 151-52; Collister,
 supra, note 5 at 57-58; Gitlow, Technology and
 NLRB Decisions in Bargaining Unit and
 Jurisdictional Dispute Cases, 16 Lab. L.J.
 731, 745 (1963); Johns supra, at 52;
 O'Donoghue, supra, note 5 at 314; Note,
 Jurisdictional Disputes Since the CBS
 Decision, 39 N.Y.U.L. Rev. 657 (1964); ABA
 Section of Labor Relations Law: Report of the
 Committee on Development of Law under NLRA,
 1964 at 124; 1965 at 445; 1967 at 99; 1968 at
 110; 1970 at 97.

Impressive as these sources are, we are not disposed to indict the
NLRB of employer bias on the basis of studies made more than
twenty-five years ago.
 CONCLUSION
 Before stating our final determination, we note one
important fact. The NLRB 10(k) decision here issued prior to the
arbitrator's award. We think this significant because of the
Board's duty to consider an arbitration award in its 10(k)
determination. See Carey v. Westinghouse Corp., 375 U.S. at 270-
71. In the case at bar, no arbitration award had been made prior
to the time the Board issued its determination. Although the Board
presumably knew that arbitration was in process and could have
deferred its decision until the award was made, its primary duty
under 10(k) was to bring the jurisdictional dispute to an end as
soon as reasonably possible. See N.L.R.B. v. Radio and Television
Broad. Eng'rs Union, 364 U.S. at 579. We cannot fault the Board
for acting promptly under the Supreme Court mandate that the Board
must decide under 10(k) which union members were entitled to the
disputed work. The Board did not have the arbitrator's award
before it for consideration.
 Another factor that compels our final determination is
that the arbitration award for damages seems to mean that the
Laborers are entitled to damages for the balance of the work on the
entire project. It states:
 All of this evidence supports the conclusion
 that the collective bargaining agreement was
 intended to have stripping of concrete forms
 performed by a composite crew of carpenters
 and laborers. This did not occur when the
 Employers assigned all actual stripping work
 to the carpenters. Therefore, I find that
 this assignment violated the Agreement.

 As remedy, the grievants are entitled to be
 made whole for lost wages and benefits. At
 the Union's request I will retain jurisdiction
 over calculation of the damages for a period
 of 120 days should the parties be unable to
 agree amongst themselves.

 The award is not limited to the work on the particular
portion of the project where the dispute erupted. As we read the
district court's opinion it proceeded on the assumption that the
damages award covered the work to be done on the entire project
(i.e., The Old Colony Railway). The Contractors-Employers would be
paying a high price for settling a labor dispute which the 10(k)
decision was designed to accomplish without the employer paying
tribute. This is contrary to the dictates of Carey v. Westinghouse
Corp., 375 U.S. at 272, where the Court held that "[s]hould the
Board disagree with the arbiter, . . . the Board's ruling would of
course, take precedence; and if the employer's action had been in
accord with that ruling, it would not be liable for damages under
 301."
 We acknowledge that the Court has tried to reconcile
arbitration awards with 10(k) decisions in jurisdictional labor
disputes. See Carey, 375 U.S. at 263-64, 266. There are
situations, however, and this is one, where arbitration and 10(k)
decisions clash. We agree with the Third Circuit that there can be
no logical distinction between "seeking the work and seeking
payment for the work." Local 30, United Slate, Tile & Comp.
Roofers v. N.L.R.B., 1 F.3d at 1427.
 We affirm the judgment of the district court.